IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

ROBERT DEAN WHITT, #254484, )
                                        )
               Petitioner, )     Civil Action No. 3:09-998-CMC-JRM
                                          )
v.                                     )
                                          )     **REPORT AND RECOMMENDATION**
MICHAEL MCCALL,             )
                                          )
               Respondent. )
_____)

Petitioner, Robert Dean Whitt ("Whitt") is an inmate at the South Carolina Department of
Corrections serving a sentence of twenty-five (25) years imprisonment for felony DUI causing death
and ten (10) years, concurrent, for reckless homicide. Whitt filed a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254 which was received by the Court on April 16, 2009. Respondent filed
a return and motion for summary judgment on July 29, 2009. Because Whitt is proceeding *pro se*,
an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4ᵗʰ Cir. 1975) was issued on July 31, 2009
advising him of his responsibility to respond to the motion for summary judgment. Whitt filed his
response to the motion on August 26, 2009.

<u>**Background and Procedural History**</u>

On September 19, 1997, Whitt, driving a rollback wrecker in Spartanburg County, collided
with a Geo Metro driven by Brandy Ann Bragg, resulting in her death. Whitt was transported to the
emergency room at the Spartanburg Regional Medical Center. According to emergency personnel,
Whitt was belligerent, abusive, smelled of alcohol and had slurred speech. A blood test showed his

1

blood alcohol level to be .037 per cent. Whitt was charged with murder and felony DUI.

A jury trial started November 16, 1998. Whitt was represented by Ricky Keith Harris, Esquire. He was found guilty of reckless homicide and felony DUI.

An Anders[1] brief was filed on Whitt's behalf by the South Carolina Office of Appellate Defense raising the following issue:

> Whether the trial court erred in refusing to grant a cha[n]ge of venue after several prospective jurors disclosed that they learned of the case through pretrial publicity and they learned that appellant had a prior record.

(App. 1337).

Pursuant to state procedure, Whitt filed a "Pro Se Supplemental Brief" raising the following issues:

> Appellant contends the lower court abused its discretion by denying his motion for change of venue for the jury selection.

> Appellant contends that evidence of analysis of his blood taken over his objection by hospital nurse while he was in the hospital prior to his arrest was not admissible and that taking his blood without a warrant violated his forth amendment rights to be free from unreasonable searches and seizures.

> Appellant would further contend that the trial judge committed error by admitting his blood analysis into evidence, which was taken by a hospital nurse over his objection while he was in the hospital, prior to him being charged and/or arrested.

The appeal was dismissed by the South Carolina Court of Appeals. *See* State v. Whitt, 2001-UP-092 (S.C.Ct.App., filed February 21, 2001). Whitt's petition for a rehearing was denied on April 18, 2001. (App. 1347). Whitt then filed a *pro se* petition for writ of certiorari in the South Carolina Supreme Court raising the following issues:

> I.    Did the Court of Appeals err in denying petition for rehearing and reconsideration and not holding that the trial judge erred in allowing the victim's father to testify and in admitting photograph of the victim.

---

[1] Anders v. California, 386 U.S. 738 (1967).

2

II.    Did trial judge err by admitting these new photographs that were taken fourteen months after the date of the accident on the eve of petitioner's trial over petitioner's timely objection?

III.   Did the trial court error in refusing to grant a change of venue where victim's totaled vehicle was displayed in front of the court house?

The petition for writ of certiorari was denied on October 25, 2001. The Remittitur was returned on October 30, 2001.

Whitt filed a *pro se* application for post-conviction relief on October 1, 2002. An amended application was filed by retained counsel, Bruce R. Fudenberg. (App. 1117), as well as a second amended application (App. 1122). The PCR court granted Whitt's motion to allow discovery after a hearing. (App. 1136). An evidentiary hearing was held on September 8, 2006. (App. 1153). Whitt called trial counsel, Mr. Harris to testify. He also called two friends, Douglas R. Fisher and Guy Hopper, both mechanics, as well as his father, Robert H. Whitt. The State recalled Mr. Harris. After the testimony, the court asked counsel to prepare proposed orders. (App. 1252). The PCR court issued an order of dismissal on July 2, 2007. (App. 1301). Counsel for Whitt filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. (App. 1316). Whitt filed a *pro se* motion to alter or amend the judgment. (App. 1328). The PCR court denied Whitt's *pro se* motion as untimely and in violation of the South Carolina rule prohibiting hybrid representation. (App. 1333). The motion to alter or amend filed by counsel was denied on November 20, 2007. (App. 1335).

A petition for writ of certiorari was filed by the South Carolina Commission on Indigent Defense raising the following issues:

1. Did the PCR court err in not finding trial counsel ineffective for failing to object to Solicitor's reference to the fact that the Grand Jury indicted Petitioner in his opening and closing arguments?

2. Did the PCR court err in not finding trial counsel ineffective for failing to

investigate the scene of the accident and thus failing to provide a defense for Petitioner?

The petition for writ of certiorari was denied by the South Carolina Supreme Court on March 18, 2009. The Remittitur was returned on April 6, 2009.

## GROUNDS FOR RELIEF

In his present petition, Whitt asserts that he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE:** Ineffective Assistance of Counsel.

> **SUPPORTING FACTS:** Counsel failed to object to solicitor's reference to the fact that the Grand Jury [indicted] Petitioner in his opening and closing arguments.

**GROUND TWO**: Ineffective Assistance of Counsel.

> **SUPPORTING FACTS**: Counsel failed to investigate the scene of the accident and failed to provide a defense.

**GROUND THREE:** Denial of Fair Trial

> **SUPPORTING FACTS**: Failure to grant change of venue.

**GROUND FOUR:** Denial of Due Process and Equal Protection of Law under the Fourteenth Amendment.

> **SUPPORTING FACTS:** Petitioner was forced to stand trial on indictments not returned by a legal constituted grand jury pursuant to the laws of this State that governs the grand jury procedures.

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the

claim.

### 1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i)  there is either an absence of available State corrective process; or
>>
>> (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he

can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 *et seq.*  A PCR applicant is also required to state all of his grounds for relief in his application.  *See*, S. C. Code Ann. § 17-27-90.  A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal.  Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court.  If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007).   A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or

through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[2] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2.    **Procedural Bypass**[3]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts,

---

[2]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[3]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and

prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Respondent concedes that Grounds 1 and 2 in the present petition have been exhausted through the PCR process and are properly before this Court. The undersigned agrees with Respondent that Ground 4 in the present petition is procedurally barred. Ground 4 alleges a denial of due process due to state grand jury irregularity. That claim was never presented to the state court. Whitt does not attempt to establish cause or prejudice, but argues that "jurisdictional defects cannot be defaulted," citing Harris v. United States, 149 F.3d 1304 (4th Cir. 1998). However, Harris was an action brought be a federal prisoner pursuant to 28 U.S.C. § 2255 and did not involve the exhaustion requirements imposed on state prisoners under 28 U.S.C. § 2254(b)(1). In essence, Harris involved a jurisdictional issue of a federal court relating to a sentence imposed by the federal court. A state prisoner cannot litigate a constitutional issue relating to state procedure in this Court without first presenting the issue to the state courts for review.

Respondent also asserts that Ground 3, denial of a fair trial based on the trial court's denial of Whitt's motion to change venue (App. 1102), is procedurally barred even though the issue was squarely presented to the South Carolina Court of Appeals in the Anders brief and Whitt's *Pro Se* Supplemental Brief. Respondent argues that the claim is procedurally barred pursuant to Coleman v. Thompson, 501 U.S. 722 (1991) because the dismissal of the direct appeal by the Court of Appeals was not an adjudication on the merits. (Res.Mem., 27-28). Citing State v. Lyles, 381 S.C. 422, 673 S.E.2d 811 (2009), Respondent appears to argue that a state prisoner cannot exhaust a direct appeal issue for federal habeas purposes by raising the issue in an Anders brief and/or the associated *pro se* brief. The undersigned disagrees. *See* Ehrhardt v. Cartledge, 2009 WL 2366095, *9 (D.S.C. 2009)

(addressing analogous exhaustion issue through a <u>Johnson</u>[4] petition for writ of certiorari following denial of a PCR).

In 1990 the South Carolina Supreme Court issued an order which stated:

> We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.

<u>In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief</u>, 321 S.C. 563, 471 S.E.2d 454 (1990).

The United States Supreme Court in <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999) addressed the question of "(w)hat remedies must a habeas petitioner invoke to satisfy the federal exhaustion requirement?" *Id.,* at 842. The Supreme Court held that state prisoners must "file petitions for discretionary review when that review is a part of the ordinary appellate procedure in the State."

*Id.,* at 847. In a concurring opinion, Justice Souter explained that "a state prisoner is likewise free to skip a procedure...so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." *Id.,* at 850. In other words, a State can suggest what constitutes exhaustion of its own remedies for purposes of federal habeas relief.

The South Carolina Supreme Court discussed the principles in <u>State v. McKennedy</u>, 348 S.C. 270, 559 S.E.2d 850 (2002), affirming dismissal of an appeal pursuant to <u>Anders</u> by the South Carolina Court of Appeals. The Court noted that the Court of Appeals cited <u>State v. Williams</u>, 305

---

[4]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988); *see also* <u>Anders v. California</u>, 386 U.S. 738 (1967).

12

S.C. 116, 406 S.E.2d 357 (1991) (establishing South Carolina procedure for considering review under Anders), in discussing the Anders appeal and concluded that "(t)he Court of Appeals citation to Williams indicates, at the very least, that it reviewed the merits of the argument Appellant's counsel put forth in the Anders brief." McKennedy, 348 S.C. at 279. The Supreme Court concluded:

> We **AFFIRM** the Court of Appeals and hold this Court's 1990 order, *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief,* 321 S.C. 563, 563, 471 S.E.2d 454, 454 (1990), establishes that seeking discretionary review in this Court is outside of South Carolina's ordinary appellate procedure and, therefore, unnecessary for purposes of exhaustion of this(sic) state remedies under *O'Sullivan.*

*Id.,* at 281.[5]

It seems clear that McKennedy stands for the proposition that from a state perspective, dismissal of an Anders appeal is on the merits, at least for the issues raised in the briefs, for the purpose of federal habeas review. In the present case, Respondent argues that the holding in McKennedy was abrogated by the South Carolina Supreme Court's ruling in Lyles. However, Respondent cites no case that has held that McKennedy was abrogated by Lyles. Lyles addressed Anders review by the Court of Appeals and a subsequent petition to the South Carolina Supreme Court following dismissal. However, there is no discussion in Lyles concerning exhaustion relating to federal habeas review. Lyles does not mention McKennedy which addressed the specific issue. *See* Singleton v. Eagleton, 2009 WL 2252272, *9, n. 8 (D.S.C.) and Alonzo-Peterson v. Riley, 2010 WL 427746, *6, n. 6 (D.S.C.). Instead, the Supreme Court addressed the Anders procedure established by Williams and held:

---

[5]The South Carolina Supreme Court noted: "the federal court ultimately will determine whether any issues raised in the Court of Appeals were properly presented for purposes of granting federal habeas relief. To guide them, however, and for the purposes of state law, we find the Court of Appeals dismissal in this case was on the merits. *Id.,* at 279.

> Under this procedure, a decision of the Court of Appeals dismissing an appeal after conducting a review pursuant to *Anders* is not a decision on the merits of the appeal, but simply reflects that the appellate court was unable to ascertain a non-frivolous issue which would require counsel to file a merits brief. A decision of this nature does not meet the "special and important" standard established by Rule 226(b) and this Court's decisions concerning petitions for writs of certiorari to the Court of Appeals. Accordingly, we deny the petition for a writ of certiorari in this matter. This Court will no longer entertain petitions for writs of certiorari where the Court of Appeals has dismissed an appeal after conducting an *Anders* review.

(Lyles, 381 S.C. at 444-445).

Respondent argues that the language from Lyles that "a decision of the Court of Appeals dismissing an appeal pursuant to Anders is not a decision on the merits of the appeal" abrogates McKennedy. Accepting Respondent's argument would preclude federal habeas consideration of issues raised and dismissed in an Anders appeal assigned to the Court of Appeals given the procedural policy announced by Lyles. A reasonable reading of McKennedy and Lyles is that a dismissal of an Anders appeal by the Court of Appeals is, from a state perspective, sufficient for exhaustion for federal habeas purposes, but it does "not meet the 'special and important' standard established by Rule 226(b)," SCACR (the rule provides that the Supreme Court has discretionary authority to review decisions of the Court of Appeals and provides a standard that certiorari will be granted "only where there are special and important reasons.").

Therefore, the undersigned rejects Respondent's argument that the holding of McKennedy was abrogated by the Supreme's Court's later decision in Lyles.

**B. Merits**

Since Whitt filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as

14

amended.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525

U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--(1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or (2) resulted in
> a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  *See* <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in [Supreme Court] cases .... A state- court
> decision will also be contrary to this Court's clearly established precedent if
> the state court confronts a set of facts that are materially indistinguishable
> from a decision of [the Supreme] Court and nevertheless arrives at a result
> different from [the Court's] precedent.

> * * *

> [A] state-court decision involves an unreasonable application of [the
> Supreme] Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the facts of the
> particular state prisoner's case. Second, a state-court decision also involves an
> unreasonable application of [the] Court's precedent if the state court either
> unreasonably extends a legal principle from [Supreme Court] precedent to a
> new context where it should not apply or unreasonably refuses to extend that
> principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

## 1. Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) quoting <u>Strickland</u>, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the

> particular case, viewed as of the time of counsel's conduct. . . the court
> must then determine whether, in light of all the circumstances, the
> identified acts or omissions were outside the <u>wide</u> <u>range</u> of
> professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.").

### a. Failure to object to Solicitor's Opening and Summation

In Ground 1, Whitt asserts that trial counsel was ineffective for failing to object to several statements by the Solicitor in his opening and closing arguments referencing the fact that Whitt had been indicated by the Grand Jury on the two charges. To succeed on this claim, Whitt would have to show that the statements were objectionable and that he was prejudiced by them.

During opening argument, the Solicitor stated:

"Your Grand Jury for Spartanburg County has indicted Mr. Whitt for the crime of murder and also for the crime of felony driving under the influence, death.
No case can come into this courtroom without the Grand Jury first returning a true-billed indictment. They have done that. The case is now properly before you for you to decide." (App. 219).

Later, the Solicitor argued:

You're going to hear witnesses [testify for the State]. After you hear all of this evidence you'll be convinced that's he's guilty of what the grand jury charged him with. (App. 224).

During summation the Solicitor told the jury:

The Grand Jury has indicated him for that charge, and the judge is going to explain to you the law. (App. 1041).

Later, the Solicitor stated:

The truth is in this case is that man's guilty of both the crimes that this Grand Jury, your Grand Jury, has indicated him for. (App. 1043).

The PCR court found that there was no basis for objection to the Solicitor's comments under South Carolina precedent. In doing so, it distinguished State v. Thomas, 287 S.C. 411, 339 S.E. 2d 129 (1986) and State v. Rudd, 355 S.C. 543, 586 S.E.2d 153 (Ct.App. 2004), two cases in which the defendant objected to arguments made by the State but was overruled. Both cases were reversed. In Thomas, the Solicitor argued that the case had been previously examined by a magistrate, a preliminary hearing had been held, and a grand jury had acted. In Rudd, the Solicitor vouched for the credibility of a child victim in a sexual exploitation case by arguing that she would have had to fool the investigators, a magistrate who signed the warrant and held a preliminary hearing, and a grand jury. These cases generally hold that arguments of the State which allude to the multiple protections afforded to a defendant prior to trial are improper because they reference preliminary determinations of fact. The PCR court found the Solicitor's mentioning the procedural fact that the case had been acted on by the Grand Jury without an attempt to show a predetermination of fact was not objectionable. (App. 1312).

Alternatively, the PCR court found that even if the comments were objectionable, Whitt could

not show prejudice due to the overwhelming evidence of guilt. (App. 1313). The court relied on Rudd's rationale that "(t)he appropriate determination is whether the solicitor's comment so infected the trial with unfairness as to make the resulting conviction a denial of due process." Rudd, 355 S.C. at 550.

The PCR court's analysis generally comports with United States Supreme Court precedent which holds that objectionable comments by the State during argument are not necessarily grounds for reversal. *See* Donnelly v. DeChristoforo, 416 U.S. 637 (1974), and Washington v. United States, 291 F.Supp.2d 418, 438 (W.D.Va. 2003) (the prosecutor's mention of the grand jury was a factual statement explaining the procedural history of the case to the trial jury).

### b. Failure to Investigate

In Ground 2, Whitt alleges that trial counsel failed to investigate the scene of the accident and to provide an adequate defense. At the PCR hearing, trial counsel testified that he could not remember if he actually visited and inspected the scene of the accident. (App. 1184). The question was asked in relation to counsel's failure to put forward a "blame the victim" strategy at trial, an argument that the victim could have pulled off onto the shoulder of the road instead of into Whitt's lane of traffic. (*Id.*)[6]

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. Sneed v. Smith, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the

---

[6]A statement that Whitt made at the scene after the accident ("The bitch was in my lane") was introduced into evidence. The State presented testimony from an accident reconstruction expert (App. 865) and a state trooper (App. 612). The State's theory was that the victim braked because Whitt was approaching in her lane causing her vehicle to veer toward the center of the road where impact occurred.

investigation is evaluated by the totality of the circumstances facing the attorney at the time. Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds* by Williams v. Taylor, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. Strickland, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial.

The PCR court addressed Whitt's general claim of a failure to investigate (App. 1313) and his claim that counsel was ineffective in not arguing that the victim contributed to the wreck. (App. 1311). The PCR court found that counsel was diligent in his representation, he reviewed all the discovery material, met with Whitt on numerous occasions, and consulted with three potential experts. At the PCR hearing Whitt presented evidence that the victim's vehicle had faulty brakes and that she could have pulled onto the shoulder as it was flat. The PCR court concluded that there was no attorney error because "whether there were problems with victims brakes or there was a shoulder on the road is irrelevant because the victim was not at fault and contributory negligence is not a defense to a criminal case" under South Carolina law. (App. 1311, citing cases). Alternatively, the PCR court found that Whitt had failed to show prejudice given the overwhelming evidence of guilt. (App. 1312).

## 2. Change of Venue

In Ground 3, Whitt alleges that he was denied a fair trial because the trial court denied his motion to change venue. Counsel moved pretrial to change venue based on "extensive pretrial publicity." (App. 1102). According to counsel an affidavit from Whitt including "numerous newspaper articles from the Spartanburg Herald Journal which include editorials, letters to the editor, actual news articles, reports which to into many different aspects of the facts and circumstances of this case, many procedural aspects of the case which have been extensively reported and sensationalized by the press, extensive reporting o the defendant's prior criminal record for D.U.I. and other things" were included with the motion.[7] (App. 144-145).

The motion was not addressed prior to trial. After the jury had been selected, counsel moved for a change of venue because a number of the potential jurors indicated that they were aware of press reports about the case. (*Id.*)

The trial court denied the motion stating that the existence of media coverage was a factor, but the issue is "whether an impartial jury cannot be selected from the panel." (App. 148). In explaining the ruling the trial court stated:

> Because of your motion and because of the fact that there was more than one isolated incident of newspaper articles or television coverage, I took the extra precaution of having individual voir dire of those jurors who had indicated some exposure to media coverage.
>
> Through that process I did determine that there were a few jurors who indicated that that exposure might well have some bearing upon their ability to be fair or upon their decision-making process. Those jurors were excused, or excused for cause.

---

[7]Whitt's affidavit with exhibits is not a part of the record before this Court.

There were other jurors who obviously indicated some exposure but indicated that the exposure was not something that they really even remembered a great deal about. Others indicated that they did have some specific recollection but that they understood that the version set forth in the newspaper article or television report might well not be accurate.

Those jurors each indicated, those who were not stricken for cause or excused for cause each indicated, that they would be willing and able to put aside anything that they had seen, read or heard by way of media exposure and to base a verdict solely upon the evidence received during the trial of the case and would not consider that information that had been received through media coverage.

I might also note that it apparently was not necessary even for you to exercise all of your preemptory challenges for those jurors that might well have been stricken for one reason or another, whether they were exposed to media coverage or not. That tells me that there really is not a serious question, and certainly there is not a serious question in my mind.

In fact, there is no question at all that a fair and impartial jury could be selected form the panel that reported this morning, and that, in fact, a fair and impartial panel has been selected to participate in the trial of this case.

(App. 149-150).

As noted above, this claim was raised in Whitt's <u>Anders</u> brief and his Pro Se Supplemental Brief. In the <u>Anders</u> brief, Whitt argued that the failure to change venue violated his right to a fair trial by an impartial jury citing <u>Duncan v. Louisiana</u>, 391 U.S. 145 (1968) and <u>Estes v. Texas</u>, 381 U.S. 532 (1965). A criminal defendant is entitled to a fair trial by a jury of his peers. This guarantee includes the right to a "panel of impartial, 'indifferent' jurors." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722, (1961). Frequently, potential jurors are exposed to pretrial information from the news media about the alleged crime. However, such exposure does not create a presumption that a defendant's right to due process will be denied. <u>Murphy v. Florida</u>, 411 U.S. 794 (1975). The trial court must determine

through voir dire whether pretrial publicity has resulted in jurors with such fixed opinions that they cannot judge the defendant's case impartially. Mu' Min v. Virginia, 500 U.S. 415 (1991). In this process, jurors are presumed to be impartial, absent clear indication to the contrary. Even a juror's preconceived feeling of defendant's guilt will not, in and of itself, void the presumption of impartiality where the juror can put that notion aside and determine the defendant's guilt or innocence based on the evidence to be presented at trial. *Irvin,* 366 U.S. at 723. Only in the most extreme cases will prejudice to a defendant's right to a fair trial be presumed from pretrial publicity itself. Dobbert v. Florida, 432 U.S. 282 (1977).

The record in this case indicates the trial court was aware of the pretrial publicity surrounding the case. During general voir dire the court identified a number of potential jurors who had been exposed to pretrial publicity. (App. 22-26). After a break, the court conducted an individual voir dire of each potential juror identified. Defense counsel was allowed to make an argument to excuse each potential juror for cause. A number of potential jurors were excused. (App. 47-136).

Based on the record before this Court, the undersigned concludes that Whitt has not shown that his right to a fair trial was denied.

### 3. Grand Jury

In his fourth ground for relief, Whitt asserts that he was denied due process and equal protection of the law because the grand jury which returned the indictments against him was not legally constituted under South Carolina law. As noted above, this claim is procedurally barred.

Insofar as Whitt asserts that the indictments were returned in violation of state law, he is not entitled to relief. Habeas relief may only be granted to a state prisoner who shows that he is in custody "in violation of the Constitution or laws...of the United States." 28 U.S.C. § 2254(a). In

short, habeas relief is not available to correct errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991).

Further, the due process clause of the United States Constitution requires only that a defendant be given sufficient notice of the charges prior to trial. Cole v. Arkansas, 333 U.S. 196 (1948). It does not require a formal arraignment. It is clear that the requirement of Grand Jury indictment contained in the Fifth Amendment to the United States Constitution does not apply to the states. Wilson v. Lindler, 8 F.3d 173, 174 (4th Cir. 1993) (en banc), *cert. denied*, 510 U.S. 1131 (1994) and U.S. v. Floresca, 38 F.3d 706, 709 n.5 (4th Cir. 1994). This rule allows states to prosecute felony cases by information as opposed to grand jury indictment. Hurtado v. California, 110 U.S. 516, 538 (1884); Wilkerson v. Whitley, 28 F.3d 498, 502-3 (4th Cir. 1994) (en banc); and Minner v. Kerby, 30 F.3d 1311, 1317-18 (10th Cir. 1994). Under South Carolina law, "(t)he indictment is a notice document." State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (S.C. 2005) (drawing a distinction between sufficiency of indictment and subject matter jurisdiction).

Whitt does not allege that he did not have sufficient notice of the charges against him.

## CONCLUSION

Based on a review of the record, the undersigned concludes that Petitioner has not shown that the State court's analysis of his claims was contrary to, or an unreasonable application of, clearly established federal law. It is, therefore, recommended that Respondent's motion for summary

judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.



_____
Joseph R. McCrorey
United States Magistrate Judge

February 22,  2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

901 Richland Street

Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).